This case is Kursar v. Department of Homeland Security Your Honour, may it please the Court. Counsel to my right on the briefs is Kevin Owen and I represent Mr. Kursar. Several issues in this case. This Court is familiar with the case. This is the second time around. The first I'd like to address is the impact of the Canadian trial court's decision on the MSPB judge's decision. First I want to say what we're not arguing here. There are many times in board litigation where external sources such as reports of the Comptroller General, other courts, Senate, other investigative committees, General Accounting Office, Inspectors General, auditing committees are useful, helpful and carry weight in board proceedings. What we're not arguing here is that all extrinsic evidence is inadmissible or unworthy of weight in an MSPB case. Not at all, quite to the contrary. What we are arguing is in the specific circumstances of this case, it was an abuse of discretion for the judge of the MSPB to rely upon the Canadian trial court's decision to discredit several affidavits of individuals sworn to testify as to the truth. Why didn't they? So the hearing request was withdrawn. Johnson, Murphy, Barker, none of them. The hearing request was withdrawn. One of the problems, I can only conjecture because I was not counsel of the case, these people, some of them were living in Canada, they were beyond the reach of subpoena, but beyond that I don't know because I didn't handle the case below. Were they involved in the insurance fraud case? No, not as far as the record reflects. There's one question with respect to Mr. Johnson, whether he was the same Johnson who was involved in the insurance fraud case. The judge found the record was inconclusive and made no determination. Isn't it correct though that Mr. Cursor never sought leave to respond to the agency's closing brief? It never objected to the agency's submission. Isn't that kind of fatal to your argument here today that the judge could not have considered the agency's final submission? Not at all, Your Honor, and I appreciate the question. I was going to get to that. There was a case that was decided by this court in 2002. The court had before it a similar set of circumstances. They're never the same, of course. These situations arise all the time with problems in the closing of a record where no hearing has been requested and one side or the other submits some evidence that needs rebuttal at the close of the record. It happens quite frequently. So in the Shucker case in 2002, the court surveyed the law. They went back to the original decision of the board, or at least the earliest that they cited, Shultz, in 1982. And Shultz, it was just like this. The judge closed the record. There was some rebuttal evidence that probably should have been submitted, but the record was closed with the evidence that was necessary to respond to coming in. And what the appellant did was object for the first time through an administrative petition for review to the MSPB. The MSPB said, right, you're correct, remanded the case back to the judge. And that was the law that this court found to be the leading case. I'm not sure I'm using the words correctly, but that was a case upon which this court certainly relied in the Shucker case. And in the Shucker case, the court expressly reserved the question of whether some type of conduct, such as you have just suggested, Judge, would be equivalent to a waiver. But since the Shucker case, the board hasn't come up with any regulation or any case law that I'm aware of, nor has this court, to my knowledge, that has suggested that what occurred here would be a waiver. What occurred here was similar to Shultz, and Shultz was one of the cases upon which this court relied in Shucker. JUSTICE KENNEDY Just for legal purity, what is the exception to the hearsay rule that would have allowed these affidavits in in the first place? MR. EBERSTADT The exception to the hearsay rule that would have allowed? JUSTICE KENNEDY They're all saying, well, I heard Johnson say, that's hearsay. They're all offering it for the truth of what he said. What would allow that to get in? MR. EBERSTADT If this was a district court, I suspect it wouldn't come in. JUSTICE KENNEDY Yes. Okay. MR. EBERSTADT But it's the Merrill District's protection. JUSTICE KENNEDY But it's an administrative procedure. Okay. MR. EBERSTADT And the MSPB allows hearsay. Many of their decisions are based entirely upon hearsay. There's hearsay all over the place. JUSTICE KENNEDY But the administrative judge could take that into consideration as further reason to question the veracity. MR. EBERSTADT I don't know that he could, because then he'd have no evidence at all. This case was decided on affidavits. If he discredits all hearsay, he has no record. If he has no record, he can't decide the case. JUSTICE KENNEDY No, he's got testimony. He's got the testimony of a witness. MR. EBERSTADT He had before him JUSTICE KENNEDY He's got Hom. Hom saying, this particular probationary employee likes to file lawsuits on you, Sarah. And why can't he credit that? MR. EBERSTADT Your Honor, that's not what Hom said, sir. What Hom said was quite to the contrary. The question JUSTICE KENNEDY He misrepresents himself and other things, that there had been earlier cases brought, whatever Hom testifies. He has Hom's testimony on the record, right? MR. EBERSTADT Hom denied making those statements. The Johnson affidavit came to this Court. The Court said the Johnson affidavit is significant enough to remand it to the Board to figure out what to do about it. On remand, the Board said, Judge, look at this affidavit. Take such further evidence as the parties offer. Decide the credibility of the evidence. Issue a decision. That's what the judge did. The problem, Your Honor, was not JUSTICE KENNEDY But there's nothing in the record except Johnson's affidavit that contradicts the Hom testimony, is there? MR. EBERSTADT Yes, there is, sir. There are the affidavits of Mr. Murphy and Mr. Barber and the contemporaneous notes of Mr. Murphy. JUSTICE KENNEDY And the agency tried to depose Mr. Johnson, and he was not available. MR. EBERSTADT Yes, that's true, Your Honor. JUSTICE KENNEDY So who has the burden here? I mean, didn't your client have some sort of a burden? We've got Mr. Hom's testimony on the record. You're denying all of this stuff. You produced an affidavit for Mr. Johnson, who was not made available for the government to cross-examine or question. Why doesn't that end the matter? MR. EBERSTADT Well, with respect, Your Honor, that's not the end of the matter because that was not the basis of the judge's decision. The judge's decision was not Mr. Hom is more credible because he testified in these affidavits. The judge's decision was based on the fact that he wholly discredited, in the first instance, the affidavits because of Curser's conduct as was reflected in the Canadian trial court proceeding. JUSTICE KENNEDY Well, that's not really true. The judge decided did he not, this case, on two alternative bases. MR. EBERSTADT Yes, I said the first instance. I was going to get to the second. JUSTICE KENNEDY All right. But so even if MR. EBERSTADT Why don't you just deal with the issue that Curser was convicted along with someone with the same name as this Johnson of insurance fraud in Canada, and it looks like that they have a bit of a record of being in cahoots to defraud. MR. EBERSTADT Sir, he was not convicted. It was a civil action and a civil fraud claim. So as far as the application of, for example, Federal Rule of Evidence 609, which would deal with a criminal conviction, it's inapplicable. And I do want to talk about the Federal Rules of Evidence for just a moment. As you just mentioned, sir, the Merit Systems Protection Board does not follow the Federal Rules of Evidence since half of its work depends upon hearsay. But on occasion when they find it and, for example, in Rule 608 and 609, there have been a couple of cases by the Board cited in our brief where the Board has either, they've affirmed the judge's application of the rule  JUSTICE KENNEDY I'm trying to hear you address directly what evidently the administrative judge responded to. And I hear you talking about administrative distinctions over criminal procedure, but I'm trying to hear why this administrative judge erred in taking all this into consideration and saying, I'm sticking with Hom. MR. EBERSTADT What he did, in order to be able to reach that result and create a basis for its decision on substantial evidence, sir, he had to discredit the affidavits of three individuals who, at least two of them, had absolutely JUSTICE KENNEDY None of whom testified, even though they were sought. MR. EBERSTADT No, I'm not sure that, I cannot tell you and I cannot agree with you with respect to anyone searching out Mr. Murphy and Mr. Barber. That I do not know, sir, what I do know. JUSTICE KENNEDY Did you bring them forward? MR. EBERSTADT Sir, Mr. Murphy was deposed and Murphy's deposition is in the record. He did not testify, but his deposition there, his deposition testimony is corroborated by his contemporaneous notes of the conversation that he witnessed between Mr. Blake and Major Hom in the spring of 2002. That's testimony, sir. It may be hearsay because it's out of reach of the judge, but testimony it is. So you have the testimony of Mr. Murphy, the contemporaneous notes, which were not mentioned by the judge, that corroborated Mr. Murphy's testimony and deposition and Mr. Murphy's affidavit. You have the sworn affidavit of Mr. Barber, who has no relationship at all, didn't even know Mr. Cursor, and then you have Johnson. So what the judge did was to say Cursor was such a bad man. CHIEF JUSTICE KENNEDY So at the best you're going to ask us to re-weigh the evidence, which we can't really do. MR. EBERSTADT I'm going to ask you to remand the case to the Board, which should have considered this in the first instance, sir. These objections  CHIEF JUSTICE KENNEDY We did that once and they did consider it. MR. EBERSTADT They sent the Johnson affidavit back to the Board judge to make a determination with respect to credibility of everything that's been said. There are lots of conflicts in this record. When the judge did what he did, the matter was taken up, just as it is with this Court right now, to the Board on an Administrative Petition for Review, which is short form, a summary affirmation, if you will. And that leaves these fascinating issues for this Court in the first instance, including the question of closing of the record, which, since Shucker, has not been decided by this Court and has not been decided by the Board. So we're not asking you to re-weigh the evidence. We're asking you to send it back to the Board, which should have examined it. And since you mentioned re-weighing the evidence, what you have here is affidavit evidence. These affidavits are not incitable, as I understand it, to the same level of credibility deference as would be sworn testimony before the MSPB. I can read the affidavits. You can read the affidavits. Anybody can read these and come to their own conclusions. But one of the conclusions that the judge should not have come to was simply because Curser was considered a bad person by the Canadian Court to make a determination. And this is what the judge did. I cannot rely on Mr. Johnson's affidavit because the probability is too high that the appellant manufactured this document with the intent of deceiving the Court, that's you, and the Board. That's subordination of perjury. He goes on to say, I cannot ignore the appellant's record of submitting false documents and enlisting his friends and confederates, that's on the next page, 812, in light of the broad scope of the appellant's efforts to defraud the BCAA. I cannot rely on the testimony of Mr. Murphy, on the affidavits of Mr. Johnson, and Mr. Johnson, at least certainly as to Barber and Murphy, have no connection that I am aware of, or that's in the record, with the Canadian Court of litigation or whatever was happening with Mr. Curser at the insurance company. And essentially saying these affidavits were efforts of subordination of perjury. That's an administrative abuse of discretion. How can you make that judgment? There's nothing on the record to do so except the Canadian Court decision involving Curser. And Curser's credibility is not an issue here, sir. It seems strange. But the real issue here is what did Major Hom say to Mr. Blake back in 2002? Well, putting it in context, you have a one-month probationary employee who is hanging on by the shoestring of a USERRA allegation, right? Probationary employees generally have almost no rights. That's true, sir. And the only way they can stay in the game at all, jurisdictionally, is to make some kind of claim such as has been done. But that claim itself hangs by some pretty thin reeds, doesn't it? It hangs by a statutory reed, sir, which Congress passed for the protection of veterans. Yes, sir. And I would call that a slender reed. Okay. Thank you, Mr. Broyden. Let's hear from the government. Thank you, sir. Ms. Holt? Thank you. May it please the court. The only way Mr. Curser can succeed in his appeal is if this court finds the board's credibility determination to not be supported by substantial evidence. As this court has held, credibility determinations are virtually unreviewable. Mr. Curser has not presented evidence sufficient to overturn the board's finding that Mr. Johnson's  Well, now, you know, you're certainly correct in stating what the framework is. But it seems to me that the problem in this case, as Mr. Broyden has laid it out, is not simply that the administrative judge said, I believe Major Hom and I think taking all the evidence together, that's the way I come down. But rather, the administrative judge has perhaps said too much in that the administrative judge has detailed why he finds the contrary evidence to be not credible. And therein, in so doing, has perhaps made more of that evidence than can reasonably be attributed to it. I mean, if he had said, for example, I believe Major Hom because I'm a Presbyterian and he's a Presbyterian, you know, if he left out the Presbyterian talk, he'd be fine. But he adds that, and suddenly, I think we have reversible error. Wouldn't you agree? Well, not in this case, Your Honor. No, but in that case. Perhaps if the case had absolutely nothing to do with whether someone was a Presbyterian, you may be correct, Your Honor. Okay, but so what we really have to focus on is, it seems to me, the rationality of the judge's explanations of the reasons that he made the credibility determination. So the fact that credibility determinations are giving great deference is all very fine and which is a narrower question of how rational are the inferences drawn by the judge in this case. Well, Your Honor, in this case, you have a specific situation where the judge made, basically, the judge discredited Mr. Johnson's affidavit for two independent reasons. One reason is essentially what Mr. Broder was just up here talking about, because of, in part, the British Columbia Supreme Court decision. Based on that decision and that evidence, the administrative judge found that Mr. Johnson's affidavit was not credible and probative. However, the judge made an independent finding, separate and apart from the British Columbia Supreme Court decision, and found separately and independently that he also did not find Mr. Johnson's affidavit credible and probative. And that language is at A12 of the corrected appendix. And it states that even if Mr. Alterich had not contacted the agency regarding the lawsuit, the British Columbia Supreme Court lawsuit, I would still find not credible the affidavits provided by Mr. Johnson and Mr. Barber or, for that matter, the testimony of Mr. Murphy. The administrative judge then gave four specific reasons as to why he did not find Mr. Johnson's affidavit credible and probative. So even if this court were to agree with Mr. Cursor's first two points in his brief, that Mr. Cursor should have had an opportunity to respond to the British Columbia Supreme Court decision, or that the British Columbia Supreme Court decision should not have been admitted into the record, even if this court finds that those two decisions by the administrative judge were in error, there's still, this court is left with an independent credibility determination by the administrative judge that's separate and apart from that document that Mr. Johnson's affidavit is not credible and probative. And when you are left with simply the affidavit and the specific reasons that the judge laid out, in part citing Hillen, but laid out as to why he found Mr. Johnson's affidavit not to be credible and probative, that is a credibility finding that is virtually unreviewable. Well, he also, Mr. Cursor, had the opportunity to rebut anything in the Canadian court proceeding, if he wished, and did not do so, right? Your Honor, that is absolutely our view. We do not find, based on our briefs, and I can elaborate here, we certainly do not find that... of that dimension, it's rather hard not to take it into consideration, right? No, you are correct, Your Honor. Mr., that, the letter, there was initially a letter from the attorney for the insurance company that was on the other side in the British Columbia Supreme Court case, and that was turned over during discovery, and that letter raised the question of whether a Duke Matthew Johnson was the same as a Matthew Johnson, and whether Mr. Cursor had committed fraud. To what extent, now, in the affidavits, the administrative judge makes the points that the affidavits track the language of the USERA statute so conveniently that it's hard to get a legal hand involved. Is that appropriate to take into consideration? Your Honor, it is. That is one of the specific reasons why the judge independently discredited Mr. Johnson's affidavit. I think it's also important to note... Is that the Barber affidavit as well? Mr. Johnson's affidavit? No, is it, is the, is that the Barber affidavit as well? That actually was all three affidavits. Yes, that's what I thought. Mr. Johnson's, Mr. Murphy, and Mr. Barber. On remand was the question. They're all kind of reciting the elements of the USERA, which is somewhat unusual for people that are supposed to be just giving their... Yes, Your Honor. ...their personal views. That is certainly the judge's point, and I will point out that the judge was even more specific than that. It wasn't even that, for example, Mr. Johnson, Mr. Murphy, or Mr. Barber themselves trapped the language, but that the language they attributed to major harm trapped the USERA language. So it's not even conceivable that Mr. Cursor, for example, can come back and say, well, perhaps the language was trapped because my attorney wrote it. Certainly, as we know, attorneys do help out with affidavits sometimes, but it was... So just on the face of the affidavits brings a certain amount of credibility into play already. Well, credibility to major harm and in credibility to the affidavits themselves, Your Honor. On that point, I'm looking at the Barber affidavit. Do you have it there? It's at appendix 236, 2-36. This is the main white appendix. Yes, Your Honor, I have it. What is it there that you think the administrative judge was tracking the language of the statute? Well, with respect to... I believe he looked at all three. With respect to Mr. Barber's affidavit, as you stated, on 2-36... Right. For example, I'm quoting, for example, Hom stated that Cursor could not be trusted and that he was a rat because Cursor filed a lawsuit against his former employer over military leave. I also remember that Hom called Cursor a bad egg and that Cursor should not be hired. So it's this sort of language that's tracking. How does that track the statute? I mean, you just... I'm not sure where the tracking is there. Well, Your Honor, USERRA protects, as I know this Court is aware, USERRA protects someone who is in the military or who exercises their rights and protects them from retaliation. As I understand it, it's undisputed, at least I think it's undisputed, that Mr. Cursor did file a previous USERRA lawsuit against his prior employer, the Sheriff's Office, I think, of one of the counties out there. Yes, Your Honor. All right. So that's a fact. Yes, Your Honor. All right. So what this affidavit is saying that Major Hom said was that he filed a lawsuit against his former employer over military leave, right? Well, and that he was a rat because of that. Yeah, but the statute doesn't have anything about rats. No, Your Honor. But the statute is very clear that you can't retaliate because someone filed a lawsuit. So if someone characterizes you as a bad person or someone that should not be hired, as a rat, you shouldn't be hired for filing. If you were telling me that Barbara had said that he was retaliated against on account of a protected USERRA activity to wit prior service in the military or something, then that might be persuasive. I just don't see anything here that fits into the administrative judge's characterization of tracking the statute. Well, Your Honor, the judge did look at all three affidavits, but that is, as I said, is an example of it's not just that someone filed a lawsuit over military leave, but I'm then going to characterize them badly and suggest they should not be hired because they filed a lawsuit over military leave. So as I said, Your Honor, regardless of the British Columbia Supreme Court decision and whether that was admissible or not, whether Mr. Cursor had the opportunity to respond to the agency's filings or not, that is covered in our briefs. We do not agree with Mr. Cursor's argument on that. We find that it has no merit. Regardless of that, however, the judge did make an independent credibility finding. That credibility finding is virtually unreviewable. It was supported by the judge for specific reasons, and for these reasons and the reasons in our brief, we believe that this court should affirm the board's decision. Thank you. Thank you, Ms. Holt. Mr. Broida, you have a little over two minutes remaining. I'll try to use them well. Thank you, Your Honor. First, with respect to the virtually unreviewable language, that first came up in this court's decision in the Homs case. There's nothing in the Supreme Court that I know of that engendered that type of language. I've read that in Broida before. Well, it seems like you have. This court has had other decisions, including Haybee, 288 Bed 3rd, 1288, where it says, we do not read our precedent as creating or endorsing any such distinction. They're talking about distinctions and levels of deference, because our cases have only required deference when an administrative judge was able to observe the demeanor of a testifying witness, and as a result, the administrative judge's findings were explicitly or implicitly based on the demeanor of the witness. There was no demeanor evaluation, and with respect to the business of the tracking of the affidavits, you have to understand, Your Honors, these people, these three people, Johnson, Murphy, and Barber, were listening to the same conversation. They were listening to a conversation that was being conducted between Johnson and Mr. Hom, Major Hom, or whatever he was, Colonel Hom. They're listening to the same thing. They're relating the same thing. Murphy made notes at the time. It's obviously going to track. They're talking about the same thing. But Murphy says, Curser reported of discrimination of his military rights by his police supervisors. Yes. That's typical language? No. I mean, if somebody says, you know, one of my clients reported discrimination by going to an EEO counselor, that's exactly what they did. It's not tracking statutory language. Barber, for example, says in his affidavit at Appendix 235 to 36, Hom stated Curser could not be trusted and that he was a rat because Curser filed a lawsuit against a former employer over military leave. I recall that Horn called Curser a bad egg and Curser should not be hired. If you look at the other affidavits here, Murphy, for example, Appendix 234, Hom said that based on Curser's reporting of discrimination of his military rights by his police supervisors, he didn't work for the police, he worked for a sheriff, he was a troublemaker and a bad egg that was willing to rat on other police officers and start internal investigations over trivial matters amounting to nothing. So you're seeking, you say we send it back, we have another hearing, let's assume these folks are unavailable and don't show up. You're suggesting that you can't really make questionable credibility determinations if you don't have witnesses there. So you've got Mr. Hom's testimony, you're still left with Mr. Hom's testimony and three or four affidavits of persons not available to be deposed or cross-examined. What is an AJ supposed to do with that? That's a very good question. If I were the AJ, I would think very hard about that. One of the things the council is going to have to think about and the board will have to think about is what to do about this decision of the British Trial Court anyway, which triggered this whole problem with this judge. Let's assume we decide to leave that out. All right, you leave it out. All right, then the judge… At some point he's going to have to make some determination as to who is telling the truth here, right? Yes. He's got four affidavits and prior testimony of someone else. He has prior testimony. And he's free, is he not, to discredit those vis-à-vis Colonel Hom? On a rational basis, yes, but not on the basis of just using an enchanted blanket of language saying that the deposition or the transcripts of the affidavits track. Of course they track. They're talking about the same conversation. Well, somebody is right. I mean, someone is not telling the truth. There's a major inconsistency. And it's just hard for me to see what you're asking for in terms of having a reasonable assurance later on that he follows the right procedures. It's hard for me to tell what you're asking for. With respect, Your Honor, what the judge did not evaluate, at least according to his decision. I don't know what's going on in his mind. But he had before him more than those three affidavits. He had, as you have mentioned, the testimony of Major Hom, for whatever his worth. Major Hom denied doing anything wrong before the board, and naturally we wouldn't be here. And that's where the credibility issue is. He also had the deposition testimony of Mr. Murphy. He also had before him the contemporaneous notes of Mr. Murphy, neither of which he described or discredited in his decision. So there's a little bit more. Thank you, Mr. Broida. I think we've reached the time. Your Honor, I thank you for your patience. Thank you very much. Our last case this morning is Tafas v. Dudas.